UNITED STATES of America,
Appellant,

v.

TRANSAMERICA CORPORATION,
Appellee.

TRANSAMERICA CORPORATION,
Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 21490, 21490–A.

United States Court of Appeals
Ninth Circuit.

March 8, 1968.

Gilbert Andrews, Jr. (argued), Atty., Dept. of Justice, Lee A. Jackson, J. Edward Shillinburg, Dept. of Justice, Mitch-

ell Rogovin, Asst. Atty. Gen., Washington, D. C., Cecil F. Poole, U. S. Atty., Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for appellant and cross-appellee.

George H. Koster (argued), of Koster, Kohlmeier & Graham, San Francisco, Cal., for appellee and cross-appellant.

Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.

MERRILL, Circuit Judge:

Transamerica Corporation has brought suit for refund of federal income taxes for the year 1958. From judgment of the District Court for the Northern District of California cross appeals have been taken. The opinion of the District Court, *sub nom.* Transamerica Corporation v. United States, appears at 254 F. Supp. 504 (1966).

### *Appeal of the United States*

The question presented is the deductibility of expenses incurred by taxpayer Transamerica in carrying out a plan of divestment of banking assets in compliance with the Bank Holding Company Act of 1956, 12 U.S.C. §§ 1841–1848, and the complementary sections of the Internal Revenue Code, 26 U.S.C. §§ 1101–1103.

The plan followed by taxpayer involved the organization of Firstamerica Corporation to which taxpayer's bank assets were transferred in exchange for stock which was then distributed to taxpayer's stockholders. The details of this plan are fully set forth in the opinion of the District Court.

The District Court rejected the Government's contention that the dominant purpose, or net effect, of the plan was that of a spin-off, or "D" reorganization, 26 U.S.C. § 368(a) (1) (D), the expenses of which should be capitalized under the normal rule as to reorganization expenses. Instead the court ruled that the plan, in essence, was a liquidation of taxpayer's bank assets, the expenses of which were currently deductible as ordinary and nec-

essary business expenses, as is the rule with respect to other forms of partial liquidation.

■ For the reasons set forth in the District Court opinion we agree. Our views are reinforced by the recent decision in United States v. General Bancshares Corp., 388 F.2d 184 (8th Cir. 1968).

On the appeal of the United States judgment is affirmed.

### *Appeal of Transamerica*

The question presented is the deductibility as a charitable contribution under § 170(c) (1) of the Internal Revenue Code of 1954, 26 U.S.C. § 170(c) (1), of real property transferred and cash paid to the City of Oakland, California by General Metals Corp., an affiliate of the taxpayer included in its consolidated 1958 return.

The property involved, known as "85th Avenue," was used by its owner as a street in connection with its manufacturing activities, and also was used by its employees and members of the public. The corporation had no intention of improving the property for its own purposes, but had been "harassed," "badgered" and "threatened" by the City to improve it for the benefit of the public.

In this context of compulsion the corporate owner entered into a written contract with the City, pursuant to which the land was conveyed to the City and a sum of money paid toward cost of improvement. The District Court rejected the taxpayer's contention that this constituted a charitable contribution and held that it constituted a capital expenditure. We agree with the result but depart, in one respect, from the reasons assigned by the District Court in its opinion.

Relying upon this court's holding in DeJong v. Commissioner of Internal Revenue, 309 F.2d 373 (9th Cir. 1962), the court held that the taxpayer had "the burden of proving that this contribution to the City of Oakland was made from a detached and disinterested generosity or from affection, respect, admiration, char-

**524**

ity or like impulses * * * rather than for obvious business reasons * * *." 254 F.Supp. at 514–515.

This language was drawn from Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), which dealt not with charitable contributions but with the exclusion of a gift from income of the recipient under section 102 of the Internal Revenue Code. In *DeJong* this court held that the *Duberstein* criteria are applicable to a charitable deduction under section 170.

*DeJong* involved an individual taxpayer, as to whom the quoted language is a not inappropriate way of phrasing the converse of a purpose to gain a direct economic benefit. It does not seem appropriate, however, to demand of a corporate entity such impulses as affection, respect or admiration. Further, an absolute requirement of detached and disinterested generosity or lack of any business purpose would tend to render *ultra vires* substantially all charitable contributions and thus to frustrate the congressional intent that corporations should enjoy such deductions. See Citizens & Southern Nat'l Bank of South Carolina v. United States, 243 F.Supp. 900, 904 (W.D.S.C.1965); Garrett, Corporate Donations, 22 Business Lawyer 297 (1967).

In the instant case, however, the record clearly establishes that apart from any indirect business benefit, such as one incidental to the public use or to public recognition of its act of generosity, the corporate owner, under its contract with the City, received a direct economic benefit, a *quid pro quo* not unlike that received by the taxpayer in *DeJong*, the securing of which was the sole purpose of its transfer and payment.[1]

On this basis we conclude that the District Court properly rejected the deduction.

Upon the appeal of Transamerica judgment is affirmed.

---

1. The courts, as well as the Internal Revenue Service, have used this distinction between "direct" and "incidental" benefit to the transferor to determine whether a charitable deduction is warranted. See, e. g., Citizens & Southern Nat'l Bank of South Carolina v. United States, supra; Rev.Rul. 67–446. Further, the corporation in the present case was acting under a form of economic duress and threatened legal compulsion. In Jordan Perlmutter, 45 T.C. 311 (1965), the Tax Court held that it would "overtax imagination" to find a charitable deduction appropriate in similar circumstances.